**In the Interest of M.C.M., C.M.M., J.L.M., and L.S.M.**

No. 01–00–00888–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 21, 2001.

Rehearing Overruled Oct. 21, 2001.

L.T. Butch Bradt, L.T. Bradt, Houston, for Appellants.

Robert Searls Johnson, Office of Attorney Generals, Austin, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices TAFT and BRISTER.

## OPINION

SCHNEIDER, Chief Justice.

The appellants, Gregory Matney ("Father") and Marla Matney ("Mother"), appeal from an order terminating their parent-child relationships. We affirm.

## Background

Appellants are the adoptive parents of two sons, M.C.M. and J.D.M.[1], and two daughters, C.M.M. and J.L.M. Mother is the biological mother of another daughter born during the marriage, L.S.M. Although not the biological father of L.S.M., Father never disputed paternity. The biological father of L.S.M. is unknown.

On March 12, 1998, the Texas Department of Protective and Regulatory Services ("the Department") filed a suit affecting parent-child relations (SAPCR), seeking to terminate appellants' parental rights to their six-year-old son, J.D.M. On May 26, 1998, the suit was amended to include the other four children. The next day, the Department took emergency custody of all five children. The six-year-old son, J.D.M, was placed in a residential treatment facility, and the other four children were placed in foster homes.

The case was heard by a jury from April 12, 2000, to May 10, 2000. On May 9, 2000, before the case was submitted to the jury, appellants voluntarily terminated their parental rights as to J.D.M., and the trial court entered an order severing the termination proceeding as to that child. The jury then returned a verdict recommending that appellants' parental rights also be terminated as to the other children, and the trial court entered an order of termination as to the remaining children on May 19, 2000.

This appeal followed, in which appellants complain: (1) that the trial court erred by using a broad-form submission of the jury questions; (2) that the order of termination was an order of criminal contempt, for which they were not afforded the pro-

---

1. The appellants voluntarily terminated their parental rights to J.D.M, and he is not a party to this appeal.

tections provided for contemnors accused of violating court orders; (3) that the trial court lacked jurisdiction to enter an order of termination because more than 18 months had passed since the trial court first made the Department managing conservator of the children; (4) that the trial judge should have recused himself because he was not impartial on certain issues raised in the case; and (5) that the trial court abused its discretion by denying them visitation rights.

## Broad—Form Submission

In issues seven through 10, appellants argue that the broad-form submission of jury questions is not proper in this type of suit. They claim that, unless the jury makes a specific finding for each ground alleged for termination, as well as a separate finding that termination would be in the best interest of the child, their parental rights cannot be terminated.

■ The jury charge in this case provided:

For the parent-child relationship to be terminated in this case, it must be proved by clear and convincing evidence that:

1. [Mother] knowingly placed or knowingly allowed [the child] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

2. [Mother] engaged in conduct or knowingly placed [the child] with persons who engaged in conduct which endangers the physical or emotional well-being of [the child]; or

3. [Mother] failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of [the child] who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of [the child's] removal from the parent under Chapter 262 for the abuse or neglect of [the child]; or

4. a. [Mother] has a mental or emotional illness or a mental deficiency that renders her unable to provide for the physical, emotional, and mental needs of [the child], and

b. the illness or deficiency, in all reasonable probability, will continue to render [Mother] unable to provide for [the child's] needs until the eighteenth birthday of [the child], and

c. [the Department] has made reasonable efforts to return [the child] to [Mother].

For the parent-child relationship to be terminated in this case, it must also be proved by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the child.

Should the parent-child relationship between [Mother] and [the child] be terminated?

Answer "Yes" or "No."

The same jury charge was submitted for [Father], except the fourth ground for termination (mental health) was omitted.

Appellants cite *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984) and *Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex.1976), as well as a plethora of other intermediate appellate court cases, which hold that there must be a finding of a statutory ground for termination and a separate finding that termination is in the best interest of the child.

However, all of the cases cited by appellants were decided before the 1988 amendment to Rule 277 of the Texas Rules of Civil Procedure, which now states that

"the court shall, whenever feasible, submit the cause upon broad-form questions." Appellants fail to cite *Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647 (Tex. 1990), which is the controlling Texas Supreme Court authority on this issue.

In *E.B.*, which was decided after Rule 277 was amended, the supreme court considered a charge almost identical to the charge in this case, which included multiple grounds for termination listed disjunctively, followed by a single question regarding whether the parent's rights should be terminated. *Id.* at 648. The Austin Court of Appeals had reversed the trial court, holding that a single broad form question incorporating two independent grounds for termination would permit the State to obtain an affirmative answer on the termination issue without proving, to the satisfaction of at least 10 jurors, that the parent violated one or more of the grounds for termination under the statute. *E.B. v. Texas Dep't of Human Servs.*, 766 S.W.2d 387, 390 (Tex.App.—Austin 1989), *rev'd*, 802 S.W.2d 647 (Tex.1990). The supreme court reversed the court of appeals and held, "The controlling question in this case was whether the parent-child relationship ... should be terminated, not what specific ground or grounds under [the statute] the jury relied on to answer affirma-

tively the question posed." *E.B.*, 802 S.W.2d at 649. In so holding, the supreme court approved both the instruction, which disjunctively submitted the alternative grounds for termination, as well as the broad-form submission of the controlling issue, i.e., whether the parent-child relationship should be terminated. *Id.*

Similarly, this Court has held that it is not necessary for the trial court to submit separate questions in parental termination cases. *See In re J.M.C.A.*, 31 S.W.3d 692, 699 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Thus, we hold that the trial court properly submitted the controlling issues in this case through its broad-form submission.[2] Accordingly, we overrule points of error seven through 10.

### Termination Order—Criminal Contempt?

In five related points of error, appellants argue that the order of termination was essentially an order of criminal contempt, and that they were not afforded the protections provided for contemnors accused of violating court orders. Specifically, appellants complain of the third ground for termination submitted to the jury, which provided:

> [Appellants] failed to comply with the provisions of a court order[3] that specifi-

---

2. We are aware that the Waco court of appeals has recently declined to follow *E.B.* in a similar case, and has held that:

   "[I]n termination cases, procedural due process requires a strict application of Rule 292's requirement of accord by ten or more jurors.... [T]he disjunctive form of the charge, without more, may violate due process because it allows for the possibility of termination based on a statutory ground not found by at least ten jurors to have been violated."

   *In re B.L.D.*, No. 10–99–335–CV, slip. op at 10, —— S.W.3d ——, ——, 2001 WL 551165 (Tex.App.—Waco May 23, 2001, n. pet. h.). However, the Supreme Court, in *E.B.*, considered and approved a charge almost identical

to that given in this case. See *E.B.* 802 S.W.2d at 649. *E.B.* has not been overruled, and this Court must follow it.

3. On June 22, 1998, the trial court had entered temporary orders, which provided:

   [Appellants] shall participate in psychotherapy and substance abuse treatment, including any in-patient program, and successfully complete the plan of therapy and treatment as recommended by Dr. Bruce Perry and Joe Peraino.

   Because of appellants' alleged failure to comply with this temporary order, the Department added a ground for termination for appellants' "failure to comply with the provi-

cally established the actions necessary for the parent to obtain the return of [the child] who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of [the child's] removal from the parent under Chapter 262 for the abuse or neglect of [the child]. . . .

Appellants argue that this ground is nothing more than an action for criminal contempt, and that they should have been given the protections afforded a criminal contemnee, such as using the "proof beyond a reasonable doubt" standard versus the "clear and convincing" standard used in termination proceedings. Appellants also contend that punishing an act of criminal contempt by terminating one's parental rights constitutes cruel and unusual punishment.

We begin by noting that the challenged ground for termination, i.e., violation of a court order that specifies the actions necessary for the parent to obtain the return of the child, is specifically provided for in the termination statute. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2001). Appellants do not challenge the constitutionality of section 161.001(1)(O). Instead, they seem to argue that violation of a court order can *only* be an act of criminal contempt, and, therefore, they are entitled to all the protections afforded a person being held in contempt of court.

■ We disagree. Violation of the trial court's temporary orders in this case may be a ground for criminal contempt, but it is *also* a ground for termination of appellants' parental rights. The fact is, appellants were not held in contempt of court, and their parental rights were not

terminated as a *punishment* for refusing to comply with the court's order. "[T]he termination of parental rights is remedial in nature and relates to the State's interest in protecting abused and neglected children, not punishment of the parent." *Ex parte Cantu,* 913 S.W.2d 701, 706 (Tex. App.—San Antonio 1995, pet. ref'd).

The trial court, in its temporary orders, determined that to .obtain the return of their children, appellants should participate in psychotherapy and substance abuse treatment. Appellants did not do so. Thus, section 161.001(1)(O) was included in the court's charge as a ground for termination. Appellants are not being punished for violating the court's order; their parental rights are being terminated because appellants refused to take the steps necessary to obtain the return of the children.

■ Furthermore, we note that for Mother, an additional three grounds for termination were submitted to the jury, and for Father, an additional two grounds for termination were submitted. None of these grounds are being challenged on appeal. When multiple grounds for termination are sought and the trial court submits the issue using a broad-form question, we must uphold the jury's findings if any of the grounds for termination supports the jury's finding. *See Edwards v. Texas Dep't of Protective and Regulatory Servs.,* 946 S.W.2d 130, 134–35 (Tex.App.—El Paso 1997, no writ); *see also E.B.,* 802 S.W.2d at 649. Appellants have not challenged the sufficiency of the evidence to support the other grounds for termination submitted to the jury. Therefore, even if we were to agree that the ground challenged in this point of error was unconsti-

---

sions of a court order that specifically established the actions necessary for the parent to

obtain the return of the child."

tutional, we would affirm on the other unchallenged grounds.

Accordingly, we overrule points of error one through five.

## Recusal of Trial Judge

In points of error 11 and 12, appellants contend that the trial judge should have been recused from the case because of his bias or prejudice. During a *Daubert*[4] hearing, the Department's expert witness, Dr. Joseph Peraino, testified that a "Rorschach Test" was used to measure the unconscious. On cross-examination, the following exchange took place:

[Appellants' counsel]: Doctor, the unconscious that you previously say it measure [sic] in part the Rorschach Test, can you name one empirical study that has ever proven the unconscious to exist?

[Dr. Peraino]: Not off the top of my head.

[Appellants' counsel]: So, what you are telling the Court is that you use a test that measures something that doesn't exist to determine what?

[Dr. Peraino]: I am sorry. What's your question?

[The trial court]: Before you finish that question, Mr. Bradt, I don't know where we are going with what tests are proven what but so it may help us on other examinations of this sort, this Court is of the opinion that there is an unconscious whether it's been proven or not. I think it's empirically known that there is an unconscious state and I take judicial notice of the existence of such.

[Appellants' counsel]: The Court takes judicial notice of something that has never been proven to exist, Your Honor? Do I understand the Court to say that?

[The trial court]: However you are defining it. I am saying that the Court takes judicial notice of the fact that this Court believes there is an unconscious state.

Appellants moved to recuse the trial judge, contending that his comments showed that he was biased or prejudiced. The trial judge refused to recuse, and the motion was referred to the presiding judge of the Second Administrative Judicial District, who appointed another judge to hear the motion.

■ Appellants and counsel failed to appear at the hearing on their motion to recuse. As a result, no evidence was presented in support of their motion, and it was denied. Appellants now challenge this ruling.

■ An order denying a motion to recuse is reviewed for an abuse of discretion. *See* Tex.R. Civ. P. 18a(f). Where a party challenges a denial of a recusal motion based on alleged bias or impartiality, the party must show that this bias arose from an extrajudicial source and not from actions during the pendency of the trial court proceedings, unless these actions during proceedings indicate a high degree of favoritism or antagonism that renders fair judgment impossible. *See Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex.App.—Houston [14th Dist.] 1997, no writ) (citing *Liteky v. U.S.*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)); *Grider v. Boston Co., Inc.*, 773 S.W.2d 338, 346 (Tex. App.—Dallas 1989, writ denied). A party's remedy for unfair rulings is to assign error regarding the adverse rulings. *See Grider*, 773 S.W.2d at 346.

Because appellants presented no evidence in support of their motion, they have

**4.** *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (Tex.1995).

not met their burden of proving that the trial judge obtained his belief in "the unconscious" from an extrajudicial source. There is nothing in the trial judge's actions to "indicate a high degree of favoritism or antagonism [rendering] fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147, 127 L.Ed.2d 474. As such, no error is shown. Appellants' remedy would have been to appeal the trial judge's ruling at the *Daubert* hearing. They did not do so.

Accordingly, we overrule points of error 11 and 12.

### Jurisdiction of the Trial Court

In point of error six, appellants contend the trial court erred by refusing to dismiss the proceeding pursuant to section 263.401 of the Family Code, which requires a final disposition of a SAPCR seeking termination of parental rights no later 12 months after the trial court makes the Department managing conservator of the child, with one six-month extension possible. Thus, under section 263.401, a SAPCR seeking termination of parental rights must, in most circumstances, be resolved within a maximum of 18 months.[5] The Department responds that: (1) appellants waived their right to complain about the trial court's refusal to dismiss the suit because they actually requested a continuance beyond the 18-month deadline; and (2) the trial court properly refused to dismiss the suit because section 161.2011 of the Family Code, which provides that no final disposition can be reached in a suit to terminate parental rights while criminal charges are pending against the parent, acts to toll the 18 month deadline imposed by section 263.401 while criminal charges are pending.

### A. Facts

Before addressing these issues, a brief recitation of facts is necessary. The Department was appointed temporary managing conservator of the children at issue in this suit on May 26, 1998. The first Monday after the anniversary of May 26, 1998, was May 31, 1999. One hundred eighty days from that date was Saturday, November 27, 1999. Therefore, the 18 month deadline imposed by section 263.401 fell on the following Monday, November 29, 1999.

On September 21, 1998, Mother was indicted on three charges of injury to a child, and Father was indicted on a charge of child endangerment and a charge of injury to a child.

On October 7, 1998, with the agreement of all parties, the trial court entered an order continuing the proceedings and declaring, "[The] dismissal of this cause shall not be set until the criminal charges are no longer pending."

---

5. Section 263.401 provides:
   (a) Unless the court has rendered a final order or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

   (b) On or before the time described by Subsection (a) for the dismissal of the suit, the court may extend the court's jurisdiction of the suit for a period stated in the extension order, but not longer than 180 days after the time described by Subsection (a), if the court has continuing jurisdiction of the suit and the appointment of the department as temporary managing conservator is in the best interest of the child.
   TEX. FAM. ANN.CODE § 263.401 (Vernon Supp. 2001).

In July 1999, well within the 18 month deadline, the Department moved to lift the "stay" and requested a September 1999 trial setting, which would also have been within the 18 month deadline. Appellants opposed lifting the stay. Mr. Bradt, appellant's counsel told the trial court at the July 28, 1999 hearing, "We don't want this case dismissed. Anything that the Court can do to maintain this one on the Court's docket, the Matneys are in agreement with." Mr. Bradt also represented to the trial court, "I believe the Court can enter an order of continuing this. We will not oppose it." On July 28, 1999, the trial court denied the Department's motion to lift the stay and request for a September trial setting.

On September 21, 1999, the Department filed a motion for reconsideration of its motion to lift the stay. This time the motion was granted, and, on October 5, 1999, the trial court lifted the stay and set the case for trial on March 14, 2000. On January 9, 2000, appellants reversed their prior position supporting the stay, and filed a motion to dismiss the case and return the children because the case had been pending longer than 18 months. The motion was denied. The case was tried to a jury verdict in favor of the Department, and the trial judge entered an order terminating appellants' parental rights on May 19, 2000, almost six months after the 18–month deadline imposed by section 263.401 had passed.

## B. Conflict between sections 263.401 and 161.2011

The issue is what effect, if any, the pending criminal cases have on the 18 month deadline for disposing of the case. We do not believe that the trial court erred by refusing to dismiss the SAPCR in this case. In *In re Neal,* 4 S.W.3d 443, 447 (Tex.App.—Houston [1st Dist.] 1999,

orig. proceeding) and *In re Bishop,* 8 S.W.3d 412, 419–20 (Tex.App.—Waco 1999, orig. proceeding), the appellate courts held that the trial courts had no discretion but to dismiss a SAPCR once the 18–month deadline had passed. However, in neither *Bishop* nor *Neal,* is there any mention of pending criminal charges against the parents.

However, in this case, criminal charges relating to the Department's grounds for termination are pending against appellants in the 268th District Court of Fort Bend County. The cases are currently set for a jury trial in August 2001. Section 161.2011(a) of the Family Code provides:

(a) The court *shall not* proceed to final trial in a suit to terminate the parent-child relationship during the time that any criminal charges filed against a parent whose right are subject to termination in the suit are pending if the criminal charges are directly related to the grounds for which termination of the parent's rights are sought unless it determines that it is in the best interest of the child.

TEX. FAM.CODE ANN. § 161.2011 (Vernon Supp.2001).

We find no cases interpreting how a criminal prosecution against the parents affects the 18 month deadline imposed by section 263.401. Section 161.2011 and section 263.401 are both mandatory statutes. Section 263.401 provides that a trial court "shall dismiss" the suit if a final order has not been rendered within 18 months of the date the Department is made managing conservator of the child. However, section 161.2011 provides that the court "shall not" proceed to trial if there are criminal charges pending against the parent.

Given these two apparently contradictory mandates, the trial judge, in whose court the suit to terminate parental rights is pending, is left in something of a quan-

dary. Should he dismiss the case and return the children to the parents once the 18 month deadline has passed, even though there are criminal charges pending against the parents? Or should he set the case for trial, despite the pending charges?

Often, setting the SAPCR for trial despite pending criminal charges, as provided in section 161.2011, would be in the best interest of the child so that the matter reaches closure in a reasonable time. But, what if the trial judge determines that the best interest of the child[6] would not be served by setting the SAPCR for trial while the criminal case was pending? Would the trial judge have no alternative but to dismiss the SAPCR and return the child to the indicted parents?

We believe that sections 161.2011 and 263.401 can be harmonized to give effect to both sections. *See* Tex. Gov't Code Ann. § 311.025(b) (Vernon 1998) (providing that amendments to the same statute enacted at the same session of the legislature, without reference to one another, shall be harmonized, if possible, to give effect to each).

■ The purpose of section 263.401 is to prevent children from languishing indefinitely in foster care. *See Bishop,* 8 S.W.3d at 416. To this end, the legislature provided an 18 month window of time for the Department to conclude the proceedings necessary to terminate the parent's parental rights once the Department is made managing conservator of the child.

Section 161.2011 appears designed to prevent the premature severance of the parent-child relationship in cases where the parent may yet be acquitted of pending criminal charges. Although an acquittal would not necessarily prevent the termination of the parent-child relationship, it

would certainly not hurt the parent's case against termination. On the other hand, if the parent were convicted of the charges, the Department would be given another ground for terminating the parental rights. *See* Tex. Fam.Code Ann. § 161.001(L) (Vernon Supp.2001). Thus, section 161.2011 contemplates a situation in which prompt resolution of the SAPCR would not necessarily serve the best interest of either the child, the parents, or the Department.

■ Therefore, we believe that section 161.2011 should be read as a stay provision. That is, the 18–month deadline will be stayed by the pendency of criminal charges against the parent. The effect of the stay is to halt all action in the SAPCR and toll the running of the applicable time limits. *Cf., Howard v. Howard,* 670 S.W.2d 737, 739 (Tex.App.—San Antonio 1984, no writ) (holding that bankruptcy stay halts all time limits in pending state court action). Once the criminal proceedings against the parent terminate, the time period for resolving the SAPCR continues. Under this interpretation, compliance with section 161.2011 would not cause the trial court to miss the dismissal deadline imposed by section 263.401.

This interpretation also prevents the absurd result of rewarding parents who are criminally indicted for abusing their children. If a parent's conduct led to the filing of criminal charges, and the SAPCR could not proceed to trial under section 161.2011, the trial court would be forced to return the child to the alleged abusive parent under section 263.401 if the criminal action prolonged the matter beyond the 18 month deadline. This could not have been the result intended by the legislature.

---

**6.** Many factors other than expediency of the proceedings determine the best interest of the

child. *See* Tex. Fam.Code Ann. § 263.307 (Vernon 1996).

Our interpretation of these two sections gives the trial court the following options when faced with a pending SAPCR seeking termination of parental rights and a pending criminal indictment against the parent. The trial judge can: (1) do nothing, and the case will be automatically stayed, pending resolution of the criminal charges against the parent, at which time the stay is automatically lifted, and the 18 month deadline imposed by section 263.401 continues to run; or (2) if the best interest of the child would be served, lift the stay and proceed to trial despite the pendency of the criminal proceeding. If the second option is chosen, the suit must be resolved within the time remaining on the 18 month deadline, not considering the time during which the case was stayed.

The trial judge, in this case, chose to do the latter. The 18 month deadline required that this case be disposed of by November 29, 1999; it was disposed of almost six months later on May 19, 2000. However, the case was automatically stayed from September 21, 1998 (the date the parents were indicted) until October 5, 1999 (the date the trial court ruled that the best interest of the children would be served by proceeding with the termination). Subtracting the year the case was stayed, the case was on the trial court's docket for approximately 14 months, well within the 18 months proscribed by section 263.401.

Therefore, the trial judge did not err by refusing to dismiss the SAPCR.

Accordingly, we overrule point of error six.

### Visitation

In point of error 13, appellants contend the trial judge erred by entering temporary orders denying them supervised visitation with their children because of the pending criminal charges against them. *See* Tex. Fam.Code Ann. § 161.2011(c) (Vernon Supp.2001). They argue that this denial is summary punishment prohibited by the Fifth and Fourteenth Amendments of the U.S. Constitution.

The temporary orders denying visitation are moot in light of the trial court's final judgment terminating appellants' parental rights.

We overrule point of error 13.

We affirm the order terminating appellants' parental rights.